KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—
January, 1882.

### SHIELDS *v.* INGRAM.

*In the matter of the probate of the will, and a codicil thereto, of* GEORGE W. SHIELDS, *deceased.*

The testator and his wife, after the former had made a will, giving all his property to the latter, for life, remainder to his next of kin, adopted a

little girl of tender years, and brought her up as their daughter. By a codicil to his will, testator substituted the adopted child as legatee, etc., in place of his collateral relatives, and died, leaving no widow or descendants. Probate of the codicil was contested, on the ground of undue influence exercised by testator's wife; the evidence in support of which were statements made by her during her life-time, and, in particular, various significant remarks addressed by her to testator, to compel him to sign a paper, to which he at first demurred, but at length suddenly consented, announcing himself ready to do " anything for peace' sake.". The evidence, however, did not render it certain that the paper in question was the codicil; nor did the latter alter the will for the wife's benefit.

*Held,* that a failure to provide for the daughter would more readily have given rise to a suspicion of undue influence, than the execution of the disputed codicil; and that, upon the evidence, the latter must be admitted.

The testimony of a witness, who assumes to recollect the exact day of a conversation had eighteen years previously, without giving any reason for her accurate memory, is to be received with caution.

APPLICATION for the probate of a will and codicil, by Anna A. Ingram, a legatee under the latter. Probate of the codicil was contested by John Shields, a brother of decedent, and others.

The facts appear sufficiently in the opinion.

WM. H. COURSEN, *for proponent.*

M. S. SMITH *and* D. C. HARRIMANN, *for contestants.*

THE SURROGATE.—There is no doubt, on the evidence, that the testator was possessed of sufficient testamentary capacity, when the codicil in dispute was made, and that the same was well executed; the only question is whether it was obtained through the undue influence of Mary A. Shields, the wife of the testator.

There is nothing in the codicil itself to warrant such a charge; the change effected by it in the will did not in any way benefit Mrs. Shields; it provided for the welfare of a little girl who had been adopted by Mr. and Mrs.

Shields since the execution of Mr. Shields' will, and who had as much claim upon him as upon his wife. The will substantially gave all the testator's property to his wife, during her life, and what should be left at her death to his heirs and next of kin. The codicil substituted the adopted daughter and her issue, for the testator's heirs and next of kin; but it provided that, if she should die before Mrs. Shields and without issue, the property should go to the testator's heirs and next of kin.

To have brought up and treated that child, from the time she was fourteen months old, in all respects as if she had been his own daughter, to have provided her for years with the comforts and luxuries which a competent fortune will command, and not to have altered that will, which made no provision for her at all, would have been an act of gross injustice,—an unnatural and heartless act,—which would much more readily have given rise to the suspicion of undue influence than the execution of a codicil carrying out the testator's intention, evinced through life, of treating his adopted daughter as if she had been his own child. It is almost impossible to believe that Mr. Shields did not intend to make any provision in his will for her, and that he would not have done so but for the undue influence of his wife; and such a conclusion should not be reached without clear and satisfactory proof to sustain it.

Excepting Mrs. Brinkerhoff's testimony, which will be considered hereafter; there is no evidence that the change in the will was in opposition to Shields' wishes, or that it was brought about by the influence of his wife. The only evidence, having a tendency to prove either of those facts, consists of certain remarks made by Mrs.

Shields and testified to by John Shields, to the effect that she had often told him that none of her husband's folks would get his money, and that she told him the same thing in the spring of 1863, in the presence of her husband, who said to her : "Mary, don't say that." Mrs. Brinkerhoff testified that she was at her uncle's house in Tarrytown, on June 20, 1863 ; that she saw Mr. Dows and another gentleman come through the gate ; that, about ten or fifteen minutes later, Mrs. Shields came up stairs, into the room where she was with her uncle, and said to him : "I want you to come down stairs and sign a paper ;" he said he did not want to go ; she told him that he must ; he asked her what the paper was about ; she explained it to him ; but he could not understand her, neither could witness, and he said in a laughing way : "Now tell me, Mary, is it a cow or a dog, you are talking about ;" she answered him : "You nasty, dirty old fool, you know it is not a cow or a dog, I am talking about ;" then she commenced with most abusive and vulgar language to him, and he said : "I will do it—I will do it;" she then said to him : "You good-for-nothing old fool, you know it is only to protect me ;" he said : "You are already protected ; what more do you want?" she said : "If you die, John Shields and Sally Southard would rob me ;" when he said he would go, he repeated twice : "Anything for peace sake ; anything for peace sake ;" she continued her abuse for some time, until he was glad to go, because it was too foul and abusive to listen to.

There are several statements in this testimony, which make it doubtful whether the conversation between Mr. and Mrs. Shields, referred to, related to the codicil in dispute. It will be remembered that the word codicil, or

will, was not mentioned by either Mr. Shields or his wife, and the witness did not know what the nature of the paper was, that Mrs. Shields wanted her husband to sign. It would seem as if Mrs. Shields wanted her husband to sign some paper which related to her, and which was necessary to her protection ; if so, it clearly was not the codicil, as it does not refer to her ; the witness does not say it was the codicil.;—that is only an inference drawn from the fact that the witness fixes June 20, 1863, as the date of the occurrence testified to, and that the codicil was executed on that day. If the witness was mistaken on this point, then clearly the paper referred to was not the codicil ; but how can the witness be certain, now, after the lapse of eighteen years, that the date was the twentieth day of June? She gives a reason for remembering, that she went to Tarrytown on June 11th or 12th, because she went immediately after burying her little girl, the date of whose death would naturally be impressed on her mind ; but she gives no reason whatever for being able to fix, with certainty, the date of the conversations between Mr. and Mrs. Shields, to which she has testified ; she states no fact which would be likely to fix the date in her mind so that, now, after the lapse of eighteen years, she could speak on the subject without doubt or hesitation ; and, considering the difficulty of doing so, and that the remarks exchanged between Mr. and Mrs. Shields do not seem to apply to the codicil, it would not be safe to set it aside on this testimony.

There is another view to be taken of the matter, upon the assumption that the paper referred to was the codicil, and that is that Mr. Shields objected to signing the paper, because he did not understand it to be a codicil to

his will, but supposed it to be some other paper, to be used for the protection of Mrs. Shields,. when in fact she did not require to be protected, but that he signed willingly on discovering his mistake.

However that may be, it is sufficient to say that, under all the circumstances of this case, the evidence is insufficient to establish the fact that the codicil was obtained through undue influence.   It should be admitted to probate.

Decreed accordingly.